

<span style="color:red">EXHIBIT A</span>

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, OFFICER JOHN DOE #1, OFFICER JOHN DOE #2, OFFICER JOHN DOE # 3, OFFICER JOHN DOE #4, OFFICER JOHN DOE #5, OFFICER JOHN DOE #6, OFFICER JOHN DOE #7, OFFICER JOHN DOE #8, OFFICER JOHN DOE # 9, & OFFICER JOHN DOE #10.<br><br>Defendants. | CIVIL DIVISION<br><br>GD No.: 19-1728<br><br>**COMPLAINT IN CIVIL ACTION**<br><br>2019 MAR 12 PM 4: 20 FILED<br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.<br><br>Todd J. Hollis, Esq.<br>Attorney For Plaintiff<br><br>**Notice to Plead**:<br>You are hereby notified to file a written response to the enclosed COMPLAINT IN CIVIL ACTION within twenty (20) days from service hereof or a judgment may be entered against you.<br><br>Todd J. Hollis, Esq. | : Filed on behalf of Plaintiff:<br><br>: **ROBERT ALDRED**<br>: Counsel of Record for this Party:<br>:<br>: Todd J. Hollis, Esquire<br>: Todd J. Hollis Law<br>: Pa. I.D. No. 72510<br><br>: The Pittsburgher<br>: 428 Forbes Avenue, Suite 505<br>: Pittsburgh PA 15219-1603<br>: (412) 434.0252<br><br>: (412) 434.0256 Facsimile<br><br>: toddjhollis@gmail.com |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, OFFICER JOHN DOE #1, OFFICER JOHN DOE #2, OFFICER JOHN DOE # 3, OFFICER JOHN DOE #4, OFFICER JOHN DOE #5, OFFICER JOHN DOE #6, OFFICER JOHN DOE #7, OFFICER JOHN DOE #8, OFFICER JOHN DOE # 9, & OFFICER JOHN DOE #10.<br><br>Defendants. | CIVIL DIVISION<br><br>GD No.: 19-1728<br><br>**COMPLAINT IN CIVIL ACTION**<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within **twenty (20) days** after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICES
ALLEGHENY COUNTY BAR ASSOCIATION
920 CITY-COUNTY BUILDING
PITTSBURGH, PA 15219
PHONE: 412-261-0518

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, OFFICER JOHN DOE #1, OFFICER JOHN DOE #2, OFFICER JOHN DOE # 3, OFFICER JOHN DOE #4, OFFICER JOHN DOE #5, OFFICER JOHN DOE #6, OFFICER JOHN DOE #7, OFFICER JOHN DOE #8, OFFICER JOHN DOE # 9, & OFFICER JOHN DOE #10.<br><br>Defendants. | CIVIL DIVISION<br><br>GD No.: 19-1728<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION

AND NOW comes the Plaintiff, Robert Aldred, by and through his attorney, Todd Jonathan Hollis, Esquire, of Todd J. Hollis Law, and claims damages of the Defendants City of Pittsburgh, Acting Chief of Police Regina McDonald, Officer John Doe #1, Officer John Doe #2, Officer John Doe #3, Officer John Doe #4, Officer John Doe #5, Officer John Doe #6, Officer John Doe #7 Officer John Doe #8 Officer John Doe #9 Officer John Doe #10, upon a cause of action whereof the following are statements:

### PARTIES

1. The Plaintiff, Robert Aldred ("Mr. Aldred), is an adult individual who resides in Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.

2. Defendant City of Pittsburgh ("City"), is a municipality within the Commonwealth of Pennsylvania, with a principal place of business located at 414 Grant Street, Pittsburgh, Pennsylvania 15219, which at all times relevant hereto, was authorized to and did operate and maintain a police department. Defendant City of Pittsburgh was acting by and through its duly authorized agents, employees and/or assigns, who were then and there acting within the course and scope of their employment under the color of state law and in accordance with the custom, policies and practices of the City of Pittsburgh.

3. Defendant Regina McDonald, was at all times relevant hereto, the acting Chief of Police of the City of Pittsburgh Bureau of Police. She is sued in her individual capacity. This defendant, at all times relevant hereto, had the day-to-day responsibility to ensure that City of Pittsburgh police officers were properly trained, supervised, and disciplined, and also, at all times relevant hereto.

4. Defendants John Doe one through ten (1-10) are adult individuals residing in the City of Pittsburgh,  who at all times relevant hereto, were employed as City of Pittsburgh police officers and who with respect to the events alleged herein, were acting under the color of state law and in accordance with the custom practices and/or policies of the City of Pittsburgh.

## STATEMENT OF JURISDICTION AND VENUE

5. This Court has jurisdiction over the state based claims the Plaintiffs bring, and venue is proper because the Plaintiff resides in Allegheny County.

6. Plaintiff, Mr. Aldred, is informed and believes, and thereon alleges, that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Mr. Aldred. Further, Pittsburgh Police and one or more Doe Defendants were, at all material times, responsible for the hiring, training, supervision, and discipline of the individual Defendants, Does 1-10.

7. Plaintiff, Mr. Aldred, is informed and believes, and thereon alleges, that each of the individually named Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Mr. Aldred is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

8. At all material times, each Defendant was jointly engaged in tortuous activity, and was an integral participant to the events and violations of rights described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

9. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the Commonwealth of Pennsylvania.

## STATEMENT OF FACTS
## BACKGROUND OF THE ATTACK

10.  The matters complained of herein occurred on Friday, June 23, 2017, the morning of Saturday, June 24, 2017, at Mr. Aldred's home, located in the Mount Washington area of Pittsburgh at 496 Norton Street, Pittsburgh Pennsylvania 15211.

11. Mr. Aldred lawfully rents his home pursuant to a written lease agreement. Mr. Aldred has one roommate, Jáson Chebatoris, who was not home when Does 1-10 first entered their home. Chebatoris returned to the home after Does 1-10 had handcuffed and detained Mr. Aldred on their front porch.

12. On June 24, 2017, Mr. Aldred's screen door was broken.

13. Following the incident complained of herein, Mr. Aldred learned that an anonymous neighbor called the Pittsburgh Police to report that they suspected a burglary was taking place at his home.

## PLAINTIFF'S MEDICAL BACKGROUND

14. Mr. Aldred is legally blind, and also suffers from chronic post-traumatic stress disorder, severe anxiety, lucid dreams and nightmares, Bipolar Disorder, and Borderline Personality Disorder, among other ailments.

15. Mr. Aldred regularly takes various prescription medications, pursuant to his doctor's orders, to treat the above-mentioned ailments and disorders.

16. On June 24, 2017, Mr. Aldred was transitioning to a new prescription medication to treat his ailments and disorders, under his doctor's supervision.

17. Mr. Aldred believes that his adjustment to this new prescription medications further hindered his perception, including his ability to understand and react to what was going on inside of his home on the night of June 24, 2017.

## **THE ATTACK**

18. On Friday, June 24, 2017, around 11 o'clock p.m., Mr. Aldred finished working as a waiter at a restaurant located in downtown Pittsburgh. Mr. Aldred and two friends went to a lounge, also located in downtown Pittsburgh.

19. Around 12:30 a.m., Mr. Aldred went back to his apartment in Mount Washington.

20. Upon returning home, Mr. Aldred noticed that his screen door was broken. His front door, which was located behind the screen, was intact. Mr. Aldred was not bothered by the broken screen door.

21. Mr. Aldred entered his home, and went to bed.

22. Mr. Aldred's bedroom encompasses the entire third floor of the house.

23. The second story of the house contains a common living area, and a second bedroom where his roommate, Jason Chebatoris, lives. Chebatoris was not home at the time that Mr. Aldred went to bed.

24. While Mr. Aldred was asleep in his bedroom on the third story of his home, John Does 1-10, and one German Shepherd canine officer, entered his bedroom.

25. John Does 1-10 each used a flashlight to gain a clear view of the inside of Mr. Aldred's home.

26. Mr. Aldred did not hear John Does 1-10 enter his home, knock, or announce their presence. He first noticed John Does 1-10 and the canine officer when they entered his third-floor bedroom with their flashlights.

27. Mr. Aldred woke up, but was naturally confused about what was happening, and why anyone was in his bedroom.

28. Mr. Aldred is legally blind, and receives various prescription medications.

29. Mr. Aldred was not armed, was sleeping in his own bedroom, and naked.

30. Does 1-10 dragged him out of his bed, and on to the floor of his bedroom.

31. Mr. Aldred did not resist, attempt to flee, or make any threatening statements or actions towards Does 1-10.

32. Mr. Aldred did not and does not have any outstanding warrants for his arrest.

33. None of the Defendants, Does 1-10, had either reasonable suspicion or probable cause to believe that Mr. Aldred had committed a serious or violent crime, or that he was about to flee. Mr. Aldred had nothing in his hands, which were clearly visible, was neither fleeing nor resisting, and posed no immediate threat to Defendants Does 1-10, nor anyone else.

34. Despite this, and without warning, Defendants Does 1-10 unleashed the canine officer on Mr. Aldred and allowed and encouraged the canine to attack Mr. Aldred.

35. Pursuant to Does 1-10's conduct, the German Shepherd ran at Mr. Aldred, who was laying naked on the floor of his bedroom.

36. Mr. Aldred instinctively raised his right forearm in front of his face to shield it from the dog's vicious attack.

37. The canine sunk his teeth all the way down into Mr. Aldred's right forearm, causing him excruciating pain.

38. The canine continued to bite Mr. Aldred all over his right forearm and his outer right thigh.

39. Mr. Aldred sustained noticeable scars on his right arm and thigh area. The scars are likely to be permanent.

40. Mr. Aldred was bleeding profusely.

41. Mr. Aldred asked John Does 1-10 what they were doing in his house.

42. Mr. Aldred repeatedly told Does 1-10 that he lived at the house.

43. Mr. Aldred begged Does 1-10 to stop the dog from attacking him.

44. In response, Does 1-10 placed handcuffs on Mr. Aldred behind his back, as he was on his stomach, naked on his bedroom floor.

45. Mr. Aldred repeated to John 1-10 that he lived at the house, and asked them to stop the dog from attacking him.

46. Does 1-10 responded that they needed to do more questioning.

47. Does 1-10 pulled Mr. Aldred off the floor and onto his feet, and walked him downstairs to the second story of his house.

48. One of the officers grabbed a pair of track pants from the second-floor bedroom and put them on Mr. Aldred, then continued walking him downstairs to the first floor.

49. Does 1-10 took the Plaintiff outside of his home and sat him on a couch on the front porch.

50. Mr. Aldred was hysterical, and was crying and still bleeding profusely.

51. Mr. Aldred continued to tell John Does 1-10 that he lived at the house.

52. Does 1-10 nonetheless detained Mr. Aldred, and left him handcuffed on his couch on his front porch, while they interrogated him without reason.

53. Numerous neighbors witnessed Does 1-10 interrogate Mr. Aldred while he was in handcuffs on his own front porch.

54. Around 2:00 o'clock a.m., Mr. Aldred's roommate, Jason Chebatoris, arrived home.

55. Chebatoris approached the front porch where Does 1-10 had detained Mr. Aldred, and asked what had happened to his roommate.

56. Chebatoris told Does 1-10 that he lived at the home with Mr. Aldred.

57. Chebatoris showed Does 1-10 his driver's license, which contained the address of the residence where the events complained of herein took place.

58. One of the Officers took Chebatoris to the side of the front porch to question him separately.

59. Mr. Aldred told Does 1-10 that he had a medical condition that required attention.

60. One of the officers motioned for the other officers to leave the front porch. The officer put on plastic gloves, and then approached Mr. Aldred and removed his handcuffs.

61. The Officer asked Mr. Aldred if he thought he needed to go to a hospital.

62. Mr. Aldred told the Officer that he absolutely needed to go to an emergency room because he was still bleeding profusely and in excruciating pain from the attack.

63. An ambulance arrived while Chebatoris was being questioned by police in a separate area.

64. Mr. Aldred was able to walk himself into the back of the ambulance and sit on the paramedic's ledge as he was transported to the room.

65. Mr. Aldred was taken to UPMC Mercy Emergency Room for treatment.

66. Mr. Aldred was prescribed antibiotics and painkillers for the severe cuts he suffered from the dog attack.

67. Physicians wrapped the Plaintiff's right arm in gauze to contain the bleeding.

68. Mr. Aldred's treating physician ordered X-Rays of his right arm to be taken, to determine if the deep dog bite had damaged his bone.

69. While being treated at UPMC Mercy Emergency Room, Mr. Aldred was visibly shaken and hysterical due to the entire ordeal.

70. UPMC Mercy staff told the Plaintiff that he needed to calm down, but he was unable remain calm due to the brutal attack.

71. Mr. Aldred was discharged around 8 o'clock a.m. on Saturday, June 24, 2017.

72. Mr. Aldred was still in pain, and so he went to Allegheny General hospital later that day, June 24, 2017, and again the following day, June 25, 2017.

73. Plaintiff was not charged with any crimes, and was not given any citations or paperwork regarding the incident.

74. At all times during Mr. Aldred's contact with Defendants, he behaved peacefully and lawfully.  Plaintiff never possessed or displayed any weapon, nor did he threaten anyone in any way. Further, Plaintiff never resisted a lawful order and never attempted to escape.

75. Defendants lacked probable cause to believe Plaintiff had committed any crime.

76. The force used by Defendants Does 1-10 against Mr. Aldred was unjustified and objectively unreasonable under the circumstances.

77. At all material times, Defendants' seizure of Mr. Aldred was done without probable cause, reasonable suspicion, or other legal right; lasted an excessive amount of time; and was conducted unreasonably.

78. Alternatively, or concurrently, Defendants' own excessive and unreasonable actions created the situation in which Does 1-10 decided to unlawfully seize and use force against Mr. Aldred, and caused an escalation of events leading to the unlawful seizure and use of force against, and injury to, Mr. Aldred.

79. At all material times, and alternatively, the actions and omissions of each defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Mr. Aldred's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

80. Mr. Aldred required medical treatment for his injuries caused by Defendants, and Plaintiff has incurred medical bills.

81. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff sustained the following injuries and damages, past and future, among others: significant physical injuries requiring medical treatment, including but not limited to multiple bites, puncture wounds, soft tissue injuries, cuts and lacerations; pain and suffering, including emotional distress; medical expenses; violation of constitutional rights; all damages and penalties recoverable under 42 U.S.C. §§ 1983, and as otherwise allowed under Pennsylvania and United States statutes, codes, and common law.

82. Does 1-10 stood by and did nothing to order or restrain the dog from biting Mr. Aldred.

83. Does 1-10 failed to give a command for the dog to stop biting Mr. Aldred's arm.

84. Although they were with Does 1-5, or close by him at all times, Does 5-10 failed to intervene to stop them from allowing the dog to bite Aldred. Moreover, Officers Does 5-10 acted in concert with Does 1-5 in allowing the dog to bite Aldred.

85. At all times relevant to the facts set forth in this Complaint, Mr. Aldred was acting in the exercise of due care for his own safety, welfare, and well being from harm.

## COUNT I
### NEGLIGENCE

Plaintiff, Robert Aldred, an individual

v.

Defendants, The City of Pittsburgh

86. The averments set forth in paragraphs numbered one (1) through (85) are incorporated by reference thereto as if more fully set forth herein.

87.   The Defendant s Does 1-10, who was at all relevant times on June 23 and 24, 2017 were employed by the City of Pittsburgh, and on duty in the course of their employment, owed a reasonable duty of care to Plaintiff in searching the home of the Plaintiff, especially during the evening hours while the Plaintiff was asleep.

88. Does 1-10 failed to use reasonable care in the search of Plaintiff's home, as described above, and thereby breached his duty to the Plaintiff which caused the injuries, as described above, to the Plaintiffs.

89. At the time of the injuries to the Plaintiffs, Does 1-10 were the authorized employee, agent, or servant of the City of Pittsburgh Police, and was acting in the course of employment or otherwise, for the City of Pittsburgh. Accordingly, under the doctrine of respondeat superior the City is liable to Plaintiff for the negligent acts of Does 1-10.

90. In addition, the City of Pittsburgh breached the duty of care it owed to the Plaintiff by employing the Defendant Does 1-10 as its employees, agents, or servants and entrusting Defendant Does 1-10 with the responsibility of safely searching for suspects, or assisting with the search of the suspects, with a police dog. The Defendant Does 1-10 were not qualified to perform this duty.

91. The Defendant City of Pittsburgh further breached its duty of care it owed to Plaintiffs by failing to train and/or supervise or properly train and/or supervise Does 1-10 in searching for suspects, especially with the use of a police dog in connection with the Pittsburgh Police.

92.   As a direct and proximate result of the dog attacks on the Plaintiffs, as described above, the Plaintiffs suffered and continue to suffer severe injuries of the mind and body, have incurred medical expenses, permanent scarring, and have lost wages. Accordingly, the Commonwealth is liable to the Plaintiffs.

## COUNT II
## VICARIOUS LIABILITY

Plaintiff, Robert Aldred, an individual
v.
Defendants, The City of Pittsburgh

93.   The averments set forth in paragraphs numbered one (1) through (92) are incorporated by reference thereto as if more fully set forth herein.

94.   The Plaintiff asserts that under the broadest principles of vicarious liability the Defendants the City of Pittsburgh is legally responsible for all of the acts herein alleged against its employees, and Does 1-10 respectively, and perhaps others, committed within the scope of their employment, who at all pertinent times were acting as officers of the law under color of law within the scope of their employment.

95.   Accordingly, under the principles of vicarious liability, as discussed in the dissenting opinion of Board of Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997), the Defendants Barnstable County Sheriff's Office and Town of Falmouth are vicariously liable for the acts, respectively of Defendants Does 1-10 for their violation of the Plaintiffs' civil and constitutional rights.

96.   The Plaintiffs bring this allegation as a good faith reservation of their right to seek a change the law in this regard as set forth in Monnell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

**WHEREFORE,** Plaintiff requests judgment against the Defendant City of Pittsburgh for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT III

### ASSAULT
Robert Aldred, an individual
v.
Defendants, Does 1-10, individually

97.   The averments set forth in paragraphs numbered one (1) through (96) are incorporated by reference thereto as if more fully set forth herein.

98.   Defendants intended to cause and did cause Mr. Aldred to suffer reasonable apprehension of an immediate harmful contact.

WHEREFORE, Plaintiff requests judgment against the Defendants Does 1-10, jointly and severally, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

### COUNT IV
#### BATTERY
Robert Aldred, an individual

v.

Defendants, Does 1-10, individually

99.   The averments set forth in paragraphs numbered one (1) through (98) are incorporated by reference thereto as if more fully set forth herein.

100.   Defendants Pittsburgh Police, a municipal entity, and Does 1-10, individuals, were in fact the aggressors, agitators and culprits harassing Mr. Aldred.

101.   Defendants Pittsburgh Police., a municipal entity, and Does 1-10, individuals intended to cause, and did in fact cause harmful contact upon Mr. Aldred's person.

102.   Mr. Aldred did not consent to the Defendants' acts.

103.   As a direct and proximate result of Defendants' conduct, Mr. Aldred suffered extreme mental anguish, physical pain and humiliation.

104.   As a direct and proximate result of Defendants' conduct, Mr. Aldred was unnecessarily handcuffed and confined at his lawful home.  Accordingly, Mr. Aldred is entitled to compensatory damages in an amount to be determined by proof at trial.

105.   Defendants' acts were done knowingly, willfully, and with malicious intent, and Mr. Aldred is entitled to punitive damages in an amount to be determined by proof at trial.

WHEREFORE, Plaintiff demands judgment be entered against Defendants, Does 1-10, in an amount in excess of the arbitration limits against the Defendants, 1-10, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Robert Aldred, an individual
v.
Defendants, Does 1-10, individually

106.   The averments set forth in paragraphs numbered one (1) through (105) are incorporated by reference thereto as if more fully set forth herein.

107.   When Defendant Officer Cummings, Defendant Officer Eisen, and Defendant Deputy Sheriff Martin undertook the actions or when they failed to act, as described above, they knew or should have known that emotional distress was the likely result of their conduct.

108.   Defendant Officer Cummings, Defendant Officer Eisen, and Defendant Deputy Sheriff Martin's actions and failure to act, as described above, were extreme and outrageous, were beyond all possible bounds of decency, and were utterly intolerable in a civilized community. The Defendants caused the Plaintiffs to sustain emotional distress so severe that no reasonable person could be expected to endure it.

109.   As a result of the conduct of the Defendants, therefore, the Plaintiff has suffered and continues to suffer extreme emotional distress and anxiety. Consequently, the Defendants are liable to the Plaintiffs for infliction of emotional distress.

WHEREFORE, Plaintiff demands judgment be entered against Defendants, Does 1-10, in an amount in excess of the arbitration limits against the Defendants, 1-10, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT VI
## FALSE ARREST

Robert Aldred, an individual
v.
Defendants, City of Pittsburgh,
and Does 1-10, individually

110.    The averments set forth in paragraphs numbered one (1) through (109) are incorporated by reference thereto as if more fully set forth herein.

111.    The Plaintiff was illegally without a warrant or probable cause and detained in his home by Defendants Does 1-10.

112.    The detention of the Plaintiff was is unlawful.

113.    The wrongful conduct of Does 1-10 is within Scope of their employment with the City.

114.    The actions or conduct of Does 1-10 is the kind of conduct the City expects its' officers to perform. The City has granted the officers broad authority and power.

115.    Does 1-10's conduct was intentional and done in the service of its' duty to its employer the City of Pittsburgh.

116.    The force used by agents Does 1-10 was not expected by the City.  Arresting the Plaintiff in his home using lethal and dangerous weapons when he committed no crime is unreasonable, wanton and reckless.

117.    As a result of the conduct of the Defendants, therefore, the Plaintiff has suffered and continues to suffer extreme emotional distress and anxiety. Consequently, the Defendants are liable to the Plaintiffs for False Arrest.

**WHEREFORE**, Plaintiff requests judgment against the Defendants City of Pittsburgh and Does 1-10, jointly and severally, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT VII
## FALSE IMPRISONMENT

Robert Aldred, an individual
v.
Defendants, City of Pittsburgh,
and Does 1-10, individually

118.  The averments set forth in paragraphs numbered one (1) through (117) are incorporated by reference thereto as if more fully set forth herein.

119. The Detention of the Plaintiff by John Does 1-10 was willful.

120. The Plaintiff did not consent to his detention by Does 1-10.

121. The detention by John Does 1-10 was unlawful.

122. As a result of the conduct of the Defendants, therefore, the Plaintiff has suffered and continues to suffer extreme emotional distress and anxiety. Consequently, the Defendants are liable to the Plaintiffs for False Imprisonment.

WHEREFORE, Plaintiff demands judgment be entered against Defendants, City of Pittsburgh and Does 1-10, in an amount in excess of the arbitration limits against the Defendants, 1-10, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT VIII

## VIOLATION OF PENNSYLVANIA GENERAL LAWS
3 P.S. section 459-101 to 1205, 3 P.S. section 501, 531 to 532,
34 Pa.C.S.A. sections  2381 to 2386, and 34 Pa.C.S.A.
sections 2941 to 2945

Robert Aldred, an individual
v.
Defendants, Does 1-10, individually

123.   The averments set forth in paragraphs numbered one (1) through (122) are incorporated by reference thereto as if more fully set forth herein.

124.   By his actions, described above, Does 1-10 were at all relevant times a keeper of the police dog  or another police dog.

125.   At all relevant times, the Plaintiffs were not trespassing, teasing, tormenting or abusing Does 1-10 or any police dog when Does 1-10, by their actions, caused the police dog to bite the Plaintiff.

126.    Plaintiff sustained serious physical and emotional injuries when the police canine bit him while the police was under the keeper-ship of Defendants Does 1-10 on or about June 23-24, 2017.

127.   At all relevant times, Does 1-10 assumed custody, management and control of the police dog.  By his status as a keeper of the dog, therefore, Does 1-10 are liable to the Plaintiff for his injuries.

128.   Defendants Does 1-10 may be entitled to indemnification for any exposure to liability under the Pennsylvania Dog Bite Statutes but not immunity.

129.   Accordingly, the Plaintiffs are entitled to relief under 3 P.S. section 459-101 to 1205, 3 P.S. section 501, 531 to 532, 34 Pa.C.S.A. sections  2381 to 2386, and 34 Pa.C.S.A. sections 2941 to 2945  (the "Dog Bite Statute") against Defendant Does 1-10.

PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff Robert Aldred respectfully request that this Honorable Court: Order judgment in Plaintiffs' favor in such a monetary amount as will fully compensate each of them for their losses to the greatest extent allowed by law. Order such punitive damages as are allowed by law. Order payment of interest, costs and attorneys fees. Order such further relief as this Court deems fair and just.

Respectfully submitted,

TODD J. HOLLIS LAW

Todd J. Hollis, Esquire
Supreme Court I.D. No. 72510
The Pittsburgher
428 Forbes Avenue, Suite 505
Pittsburgh, PA 15219
Phone: (412) 434.0252
Fax: (412) 434.0256
Email: toddjhollis@gmail.com

Dated:  March 12, 2019

## VERIFICATION

I verify that the facts set forth in this Complaint are true and correct to the best of my information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.

Date: 10/12/2017

DocuSigned by:

Robert Aldred

461D65A9D95B430...

Mr. Robert Aldred

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, OFFICER JOHN DOE #1, OFFICER JOHN DOE #2, OFFICER JOHN DOE # 3, OFFICER JOHN DOE #4, OFFICER JOHN DOE #5, OFFICER JOHN DOE #6, OFFICER JOHN DOE #7, OFFICER JOHN DOE #8, OFFICER JOHN DOE # 9, & OFFICER JOHN DOE #10.<br><br>Defendants. | CIVIL DIVISION<br><br>GD No.: 19-1728<br><br>**COMPLAINT IN CIVIL ACTION**<br><br>2019 MAR 12 Fri 4:20   FILED<br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.<br><br>Todd J. Hollis, Esq.<br>Attorney For Plaintiff<br><br>**Notice to Plead:**<br>You are hereby notified to file a written response to the enclosed COMPLAINT IN CIVIL ACTION within twenty (20) days from service hereof or a judgment may be entered against you.<br><br>Todd J. Hollis, Esq. | : Filed on behalf of Plaintiff:<br><br>: **ROBERT ALDRED**<br>: Counsel of Record for this Party:<br>:<br>: Todd J. Hollis, Esquire<br>: Todd J. Hollis Law<br>: Pa. I.D. No. 72510<br><br>: The Pittsburgher<br>: 428 Forbes Avenue, Suite 505<br>: Pittsburgh PA 15219-1603<br>: (412) 434.0252<br><br>: (412) 434.0256 Facsimile<br><br>: toddjhollis@gmail.com |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual | CIVIL DIVISION |
| Plaintiff, | GD No.: 19-1728 |
| v. | **COMPLAINT IN CIVIL ACTION** |
| CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, OFFICER JOHN DOE #1, OFFICER JOHN DOE #2, OFFICER JOHN DOE # 3, OFFICER JOHN DOE #4, OFFICER JOHN DOE #5, OFFICER JOHN DOE #6, OFFICER JOHN DOE #7, OFFICER JOHN DOE #8, OFFICER JOHN DOE # 9, & OFFICER JOHN DOE #10. | |
| Defendants. | JURY TRIAL DEMANDED |

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within **twenty (20) days** after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYER REFERRAL SERVICES<br>
ALLEGHENY COUNTY BAR ASSOCIATION<br>
920 CITY-COUNTY BUILDING<br>
PITTSBURGH, PA 15219<br>
PHONE: 412-261-0518

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, OFFICER JOHN DOE #1, OFFICER JOHN DOE #2, OFFICER JOHN DOE # 3, OFFICER JOHN DOE #4, OFFICER JOHN DOE #5, OFFICER JOHN DOE #6, OFFICER JOHN DOE #7, OFFICER JOHN DOE #8, OFFICER JOHN DOE # 9, & OFFICER JOHN DOE #10.<br><br>Defendants. | CIVIL DIVISION<br><br>GD No.: 19-1728<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION

AND NOW comes the Plaintiff, Robert Aldred, by and through his attorney, Todd Jonathan Hollis, Esquire, of Todd J. Hollis Law, and claims damages of the Defendants City of Pittsburgh, Acting Chief of Police Regina McDonald, Officer John Doe #1, Officer John Doe #2, Officer John Doe #3, Officer John Doe #4, Officer John Doe #5, Officer John Doe #6, Officer John Doe #7 Officer John Doe #8 Officer John Doe #9 Officer John Doe #10, upon a cause of action whereof the following are statements:

## PARTIES

1. The Plaintiff, Robert Aldred ("Mr. Aldred), is an adult individual who resides in Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.

2. Defendant City of Pittsburgh ("City"), is a municipality within the Commonwealth of Pennsylvania, with a principal place of business located at 414 Grant Street, Pittsburgh, Pennsylvania 15219, which at all times relevant hereto, was authorized to and did operate and maintain a police department.  Defendant City of Pittsburgh was acting by and through its duly authorized agents, employees and/or assigns, who were then and there acting within the course and scope of their employment under the color of state law and in accordance with the custom, policies and practices of the City of Pittsburgh.

3.   Defendant Regina McDonald, was at all times relevant hereto, the acting Chief of Police of the City of Pittsburgh Bureau of Police.  She is sued in her individual capacity. This defendant, at all times relevant hereto, had the day-to-day responsibility to ensure that City of Pittsburgh police officers were properly trained, supervised, and disciplined, and also, at all times relevant hereto.

4.   Defendants John Doe one through ten (1-10) are adult individuals residing in the City of Pittsburgh,  who at all times relevant hereto, were employed as City of Pittsburgh police officers and who with respect to the events alleged herein, were acting under the color of state law and in accordance with the custom practices and/or policies of the City of Pittsburgh.

## STATEMENT OF JURISDICTION AND VENUE

5.   This Court has jurisdiction over the state based claims the Plaintiffs bring, and venue is proper because the Plaintiff resides in Allegheny County.

6. Plaintiff, Mr. Aldred, is informed and believes, and thereon alleges, that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Mr. Aldred. Further, Pittsburgh Police and one or more Doe Defendants were, at all material times, responsible for the hiring, training, supervision, and discipline of the individual Defendants, Does 1-10.

7. Plaintiff, Mr. Aldred, is informed and believes, and thereon alleges, that each of the individually named Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Mr. Aldred is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

8. At all material times, each Defendant was jointly engaged in tortuous activity, and was an integral participant to the events and violations of rights described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

9. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the Commonwealth of Pennsylvania.

## STATEMENT OF FACTS
## BACKGROUND OF THE ATTACK

10. The matters complained of herein occurred on Friday, June 23, 2017, the morning of Saturday, June 24, 2017, at Mr. Aldred's home, located in the Mount Washington area of Pittsburgh at 496 Norton Street, Pittsburgh Pennsylvania 15211.

11. Mr. Aldred lawfully rents his home pursuant to a written lease agreement. Mr. Aldred has one roommate, Jason Chebatoris, who was not home when Does 1-10 first entered their home. Chebatoris returned to the home after Does 1-10 had handcuffed and detained Mr. Aldred on their front porch.

12. On June 24, 2017, Mr. Aldred's screen door was broken.

13. Following the incident complained of herein, Mr. Aldred learned that an anonymous neighbor called the Pittsburgh Police to report that they suspected a burglary was taking place at his home.

## PLAINTIFF'S MEDICAL BACKGROUND

14. Mr. Aldred is legally blind, and also suffers from chronic post-traumatic stress disorder, severe anxiety, lucid dreams and nightmares, Bipolar Disorder, and Borderline Personality Disorder, among other ailments.

15. Mr. Aldred regularly takes various prescription medications, pursuant to his doctor's orders, to treat the above-mentioned ailments and disorders.

16. On June 24, 2017, Mr. Aldred was transitioning to a new prescription medication to treat his ailments and disorders, under his doctor's supervision.

17. Mr. Aldred believes that his adjustment to this new prescription medications further hindered his perception, including his ability to understand and react to what was going on inside of his home on the night of June 24, 2017.

## THE ATTACK

18. On Friday, June 24, 2017, around 11 o'clock p.m., Mr. Aldred finished working as a waiter at a restaurant located in downtown Pittsburgh. Mr. Aldred and two friends went to a lounge, also located in downtown Pittsburgh.

19. Around 12:30 a.m., Mr. Aldred went back to his apartment in Mount Washington.

20. Upon returning home, Mr. Aldred noticed that his screen door was broken. His front door, which was located behind the screen, was intact. Mr. Aldred was not bothered by the broken screen door.

21. Mr. Aldred entered his home, and went to bed.

22. Mr. Aldred's bedroom encompasses the entire third floor of the house.

23. The second story of the house contains a common living area, and a second bedroom where his roommate, Jason Chebatoris, lives. Chebatoris was not home at the time that Mr. Aldred went to bed.

24. While Mr. Aldred was asleep in his bedroom on the third story of his home, John Does 1-10, and one German Shepherd canine officer, entered his bedroom.

25. John Does 1-10 each used a flashlight to gain a clear view of the inside of Mr. Aldred's home.

26. Mr. Aldred did not hear John Does 1-10 enter his home, knock, or announce their presence. He first noticed John Does 1-10 and the canine officer when they entered his third-floor bedroom with their flashlights.

27. Mr. Aldred woke up, but was naturally confused about what was happening, and why anyone was in his bedroom.

28. Mr. Aldred is legally blind, and receives various prescription medications.

29. Mr. Aldred was not armed, was sleeping in his own bedroom, and naked.

30. Does 1-10 dragged him out of his bed, and on to the floor of his bedroom.

31. Mr. Aldred did not resist, attempt to flee, or make any threatening statements or actions towards Does 1-10.

32. Mr. Aldred did not and does not have any outstanding warrants for his arrest.

33. None of the Defendants, Does 1-10, had either reasonable suspicion or probable cause to believe that Mr. Aldred had committed a serious or violent crime, or that he was about to flee.  Mr. Aldred had nothing in his hands, which were clearly visible, was neither fleeing nor resisting, and posed no immediate threat to Defendants Does 1-10, nor anyone else.

34. Despite this, and without warning, Defendants Does 1-10 unleashed the canine officer on Mr. Aldred and allowed and encouraged the canine to attack Mr. Aldred.

35. Pursuant to Does 1-10's conduct, the German Shepherd ran at Mr. Aldred, who was laying naked on the floor of his bedroom.

36. Mr. Aldred instinctively raised his right forearm in front of his face to shield it from the dog's vicious attack.

37. The canine sunk his teeth all the way down into Mr. Aldred's right forearm, causing him excruciating pain.

38. The canine continued to bite Mr. Aldred all over his right forearm and his outer right thigh.

39. Mr. Aldred sustained noticeable scars on his right arm and thigh area. The scars are likely to be permanent.

40. Mr. Aldred was bleeding profusely.

41. Mr. Aldred asked John Does 1-10 what they were doing in his house.

42. Mr. Aldred repeatedly told Does 1-10 that he lived at the house.

43. Mr. Aldred begged Does 1-10 to stop the dog from attacking him.

44. In response, Does 1-10 placed handcuffs on Mr. Aldred behind his back, as he was on his stomach, naked on his bedroom floor.

45. Mr. Aldred repeated to John 1-10 that he lived at the house, and asked them to stop the dog from attacking him.

46. Does 1-10 responded that they needed to do more questioning.

47. Does 1-10 pulled Mr. Aldred off the floor and onto his feet, and walked him downstairs to the second story of his house.

48. One of the officers grabbed a pair of track pants from the second-floor bedroom and put them on Mr. Aldred, then continued walking him downstairs to the first floor.

49. Does 1-10 took the Plaintiff outside of his home and sat him on a couch on the front porch.

50. Mr. Aldred was hysterical, and was crying and still bleeding profusely.

51. Mr. Aldred continued to tell John Does 1-10 that he lived at the house.

52. Does 1-10 nonetheless detained Mr. Aldred, and left him handcuffed on his couch on his front porch, while they interrogated him without reason.

53. Numerous neighbors witnessed Does 1-10 interrogate Mr. Aldred while he was in handcuffs on his own front porch.

54. Around 2:00 o'clock a.m., Mr. Aldred's roommate, Jason Chebatoris, arrived home.

55. Chebatoris approached the front porch where Does 1-10 had detained Mr. Aldred, and asked what had happened to his roommate.

56. Chebatoris told Does 1-10 that he lived at the home with Mr. Aldred.

57. Chebatoris showed Does 1-10 his driver's license, which contained the address of the residence where the events complained of herein took place.

58. One of the Officers took Chebatoris to the side of the front porch to question him separately.

59. Mr. Aldred told Does 1-10 that he had a medical condition that required attention.

60. One of the officers motioned for the other officers to leave the front porch. The officer put on plastic gloves, and then approached Mr. Aldred and removed his handcuffs.

61. The Officer asked Mr. Aldred if he thought he needed to go to a hospital.

62. Mr. Aldred told the Officer that he absolutely needed to go to an emergency room because he was still bleeding profusely and in excruciating pain from the attack.

63. An ambulance arrived while Chebatoris was being questioned by police in a separate area.

64. Mr. Aldred was able to walk himself into the back of the ambulance and sit on the paramedic's ledge as he was transported to the room.

65. Mr. Aldred was taken to UPMC Mercy Emergency Room for treatment.

66. Mr. Aldred was prescribed antibiotics and painkillers for the severe cuts he suffered from the dog attack.

67. Physicians wrapped the Plaintiff's right arm in gauze to contain the bleeding.

68. Mr. Aldred's treating physician ordered X-Rays of his right arm to be taken, to determine if the deep dog bite had damaged his bone.

69. While being treated at UPMC Mercy Emergency Room, Mr. Aldred was visibly shaken and hysterical due to the entire ordeal.

70. UPMC Mercy staff told the Plaintiff that he needed to calm down, but he was unable remain calm due to the brutal attack.

71. Mr. Aldred was discharged around 8 o'clock a.m. on Saturday, June 24, 2017.

72. Mr. Aldred was still in pain, and so he went to Allegheny General hospital later that day, June 24, 2017, and again the following day, June 25, 2017.

73. Plaintiff was not charged with any crimes, and was not given any citations or paperwork regarding the incident.

74. At all times during Mr. Aldred's contact with Defendants, he behaved peacefully and lawfully.  Plaintiff never possessed or displayed any weapon, nor did he threaten anyone in any way. Further, Plaintiff never resisted a lawful order and never attempted to escape.

75. Defendants lacked probable cause to believe Plaintiff had committed any crime.

76. The force used by Defendants Does 1-10 against Mr. Aldred was unjustified and objectively unreasonable under the circumstances.

77. At all material times, Defendants' seizure of Mr. Aldred was done without probable cause, reasonable suspicion, or other legal right; lasted an excessive amount of time; and was conducted unreasonably.

78. Alternatively, or concurrently, Defendants' own excessive and unreasonable actions created the situation in which Does 1-10 decided to unlawfully seize and use force against Mr. Aldred, and caused an escalation of events leading to the unlawful seizure and use of force against, and injury to, Mr. Aldred.

79. At all material times, and alternatively, the actions and omissions of each defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Mr. Aldred's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

80. Mr. Aldred required medical treatment for his injuries caused by Defendants, and Plaintiff has incurred medical bills.

81. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff sustained the following injuries and damages, past and future, among others: significant physical injuries requiring medical treatment, including but not limited to multiple bites, puncture wounds, soft tissue injuries, cuts and lacerations; pain and suffering, including emotional distress; medical expenses; violation of constitutional rights; all damages and penalties recoverable under 42 U.S.C. §§ 1983, and as otherwise allowed under Pennsylvania and United States statutes, codes, and common law.

82. Does 1-10 stood by and did nothing to order or restrain the dog from biting Mr. Aldred.

83. Does 1-10 failed to give a command for the dog to stop biting Mr. Aldred's arm.

84. Although they were with Does 1-5, or close by him at all times, Does 5-10 failed to intervene to stop them from allowing the dog to bite Aldred. Moreover, Officers Does 5-10 acted in concert with Does 1-5 in allowing the dog to bite Aldred.

85. At all times relevant to the facts set forth in this Complaint, Mr. Aldred was acting in the exercise of due care for his own safety, welfare, and well being from harm.

### COUNT I
### NEGLIGENCE

Plaintiff, Robert Aldred, an individual
v.
Defendants, The City of Pittsburgh

86. The averments set forth in paragraphs numbered one (1) through (85) are incorporated by reference thereto as if more fully set forth herein.

87.   The Defendant s Does 1-10, who was at all relevant times on June 23 and 24, 2017 were  employed by the City of Pittsburgh, and on duty in the course of their employment, owed a reasonable duty of care to Plaintiff in searching the home of the Plaintiff, especially during the evening hours while the Plaintiff was asleep.

88. Does 1-10 failed to use reasonable care in the search of Plaintiff's home, as described above, and thereby breached his duty to the Plaintiff which caused the injuries, as described above, to the Plaintiffs.

89. At the time of the injuries to the Plaintiffs, Does 1-10 were the authorized employee, agent, or servant of the City of Pittsburgh Police, and was acting in the course of employment or otherwise, for the City of Pittsburgh. Accordingly, under the doctrine of respondeat superior the City is liable to Plaintiff for the negligent acts of Does 1-10.

90. In addition, the City of Pittsburgh breached the duty of care it owed to the Plaintiff by employing the Defendant Does 1-10 as its employees, agents, or servants and entrusting Defendant Does 1-10 with the responsibility of safely searching for suspects, or assisting with the search of the suspects, with a police dog. The Defendant Does 1-10 were not qualified to perform this duty.

91. The Defendant City of Pittsburgh further breached its duty of care it owed to Plaintiffs by failing to train and/or supervise or properly train and/or supervise Does 1-10 in searching for suspects, especially with the use of a police dog in connection with the Pittsburgh Police.

92.   As a direct and proximate result of the dog attacks on the Plaintiffs, as described above, the Plaintiffs suffered and continue to suffer severe injuries of the mind and body, have incurred medical expenses, permanent scarring, and have lost wages. Accordingly, the Commonwealth is liable to the Plaintiffs.

## COUNT II
## VICARIOUS LIABILITY

Plaintiff, Robert Aldred, an individual
v.
Defendants, The City of Pittsburgh

93. The averments set forth in paragraphs numbered one (1) through (92) are incorporated by reference thereto as if more fully set forth herein.

94. The Plaintiff asserts that under the broadest principles of vicarious liability the Defendants the City of Pittsburgh is legally responsible for all of the acts herein alleged against its employees, and Does 1-10 respectively, and perhaps others, committed within the scope of their employment, who at all pertinent times were acting as officers of the law under color of law within the scope of their employment.

95. Accordingly, under the principles of vicarious liability, as discussed in the dissenting opinion of Board of Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997), the Defendants Barnstable County Sheriff's Office and Town of Falmouth are vicariously liable for the acts, respectively of Defendants Does 1-10 for their violation of the Plaintiffs' civil and constitutional rights.

96. The Plaintiffs bring this allegation as a good faith reservation of their right to seek a change the law in this regard as set forth in Monnell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

WHEREFORE, Plaintiff requests judgment against the Defendant City of Pittsburgh for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT III

### ASSAULT
Robert Aldred, an individual
v.
Defendants, Does 1-10, individually

97. The averments set forth in paragraphs numbered one (1) through (96) are incorporated by reference thereto as if more fully set forth herein.

98. Defendants intended to cause and did cause Mr. Aldred to suffer reasonable apprehension of an immediate harmful contact.

WHEREFORE, Plaintiff requests judgment against the Defendants Does 1-10, jointly and severally, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT IV

### BATTERY

Robert Aldred, an individual

v.

Defendants, Does 1-10, individually

99.   The averments set forth in paragraphs numbered one (1) through (98) are incorporated by reference thereto as if more fully set forth herein.

100.   Defendants Pittsburgh Police, a municipal entity, and Does 1-10, individuals, were in fact the aggressors, agitators and culprits harassing Mr. Aldred.

101.   Defendants Pittsburgh Police., a municipal entity, and Does 1-10, individuals intended to cause, and did in fact cause harmful contact upon Mr. Aldred's person.

102.   Mr. Aldred did not consent to the Defendants' acts.

103.   As a direct and proximate result of Defendants' conduct, Mr. Aldred suffered extreme mental anguish, physical pain and humiliation.

104.   As a direct and proximate result of Defendants' conduct, Mr. Aldred was unnecessarily handcuffed and confined at his lawful home.  Accordingly, Mr. Aldred is entitled to compensatory damages in an amount to be determined by proof at trial.

105.   Defendants' acts were done knowingly, willfully, and with malicious intent, and Mr. Aldred is entitled to punitive damages in an amount to be determined by proof at trial.

WHEREFORE, Plaintiff demands judgment be entered against Defendants, Does 1-10, in an amount in excess of the arbitration limits against the Defendants, 1-10, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Robert Aldred, an individual
v.
Defendants, Does 1-10, individually

106.   The averments set forth in paragraphs numbered one (1) through (105) are incorporated by reference thereto as if more fully set forth herein.

107.   When Defendant Officer Cummings, Defendant Officer Eisen, and Defendant Deputy Sheriff Martin undertook the actions or when they failed to act, as described above, they knew or should have known that emotional distress was the likely result of their conduct.

108.   Defendant Officer Cummings, Defendant Officer Eisen, and Defendant Deputy Sheriff Martin's actions and failure to act, as described above, were extreme and outrageous, were beyond all possible bounds of decency, and were utterly intolerable in a civilized community. The Defendants caused the Plaintiffs to sustain emotional distress so severe that no reasonable person could be expected to endure it.

109.   As a result of the conduct of the Defendants, therefore, the Plaintiff has suffered and continues to suffer extreme emotional distress and anxiety. Consequently, the Defendants are liable to the Plaintiffs for infliction of emotional distress.

WHEREFORE, Plaintiff demands judgment be entered against Defendants, Does 1-10, in an amount in excess of the arbitration limits against the Defendants, 1-10, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT VI
## FALSE ARREST

Robert Aldred, an individual
v.
Defendants, City of Pittsburgh,
and Does 1-10, individually

110.    The averments set forth in paragraphs numbered one (1) through (109) are incorporated by reference thereto as if more fully set forth herein.

111.   The  Plaintiff was illegally without a warrant or probable cause and detained in his home by Defendants Does 1-10.

112.   The detention of the Plaintiff was is unlawful.

113. The wrongful conduct of Does 1-10 is within Scope of their employment with the City.

114.  The actions or conduct of Does 1-10 is the kind of conduct the City expects its' officers to perform. The City has granted the officers broad authority and power.

115. Does 1-10's conduct was intentional and done in the service of its' duty to its employer the City of Pittsburgh.

116.   The force used by agents Does 1-10 was not expected by the City.  Arresting the Plaintiff in his home using lethal and dangerous weapons when he committed no crime is unreasonable, wanton and reckless.

117.    As a result of the conduct of the Defendants, therefore, the Plaintiff has suffered and continues to suffer extreme emotional distress and anxiety. Consequently, the Defendants are liable to the Plaintiffs for False Arrest.

WHEREFORE, Plaintiff requests judgment against the Defendants City of Pittsburgh and Does 1-10, jointly and severally, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT VII
## FALSE IMPRISONMENT

Robert Aldred, an individual
v.
Defendants, City of Pittsburgh,
and Does 1-10, individually

118.  The averments set forth in paragraphs numbered one (1) through (117) are incorporated by reference thereto as if more fully set forth herein.

119.  The Detention of the Plaintiff by John Does 1-10 was willful.

120.  The Plaintiff did not consent to his detention by Does 1-10.

121.  The detention by John Does 1-10 was unlawful.

122.  As a result of the conduct of the Defendants, therefore, the Plaintiff has suffered and continues to suffer extreme emotional distress and anxiety. Consequently, the Defendants are liable to the Plaintiffs for False Imprisonment.

WHEREFORE, Plaintiff demands judgment be entered against Defendants, City of Pittsburgh and Does 1-10, in an amount in excess of the arbitration limits against the Defendants, 1-10, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT VIII

## VIOLATION OF PENNSYLVANIA GENERAL LAWS
3 P.S. section 459-101 to 1205, 3 P.S. section 501, 531 to 532,
34 Pa.C.S.A. sections  2381 to 2386, and 34 Pa.C.S.A.
sections 2941 to 2945

Robert Aldred, an individual
v.
Defendants, Does 1-10, individually

123.   The averments set forth in paragraphs numbered one (1) through (122) are incorporated by reference thereto as if more fully set forth herein.

124.   By his actions, described above, Does 1-10 were at all relevant times a keeper of the police dog  or another police dog.

125.   At all relevant times, the Plaintiffs were not trespassing, teasing, tormenting or abusing Does 1-10 or any police dog when Does 1-10, by their actions, caused the police dog to bite the Plaintiff.

126.   Plaintiff sustained serious physical and emotional injuries when the police canine bit him while the police was under the keeper-ship of Defendants Does 1-10 on or about June 23-24, 2017.

127.   At all relevant times, Does 1-10 assumed custody, management and control of the police dog.  By his status as a keeper of the dog, therefore, Does 1-10 are liable to the Plaintiff for his injuries.

128.   Defendants Does 1-10 may be entitled to indemnification for any exposure to liability under the Pennsylvania Dog Bite Statutes but not immunity.

129.   Accordingly, the Plaintiffs are entitled to relief under 3 P.S. section 459-101 to 1205, 3 P.S. section 501, 531 to 532, 34 Pa.C.S.A. sections  2381 to 2386, and 34 Pa.C.S.A. sections 2941 to 2945  (the "Dog Bite Statute") against Defendant Does 1-10.

PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff Robert Aldred respectfully request that this Honorable Court: Order judgment in Plaintiffs' favor in such a monetary amount as will fully compensate each of them for their losses to the greatest extent allowed by law. Order such punitive damages as are allowed by law.  Order payment of interest, costs and attorneys fees.  Order such further relief as this Court deems fair and just.

Respectfully submitted,

TODD J. HOLLIS LAW

Todd J. Hollis, Esquire
Supreme Court I.D. No. 72510
The Pittsburgher
428 Forbes Avenue, Suite 505
Pittsburgh, PA 15219
Phone: (412) 434.0252
Fax: (412) 434.0256
Email: toddjhollis@gmail.com

Dated:  March 12, 2019

DocuSign Envelope ID: BAC59B92-D669-42A7-8D18-2F5BA664443F

## VERIFICATION

I verify that the facts set forth in this Complaint are true and correct to the best of my information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.

Date: ____10/12/2017____

Mr. Robert Aldred

*HS*

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

ROBERT ALDRED, an individual

   Plaintiff,

   v.

CITY OF PITTSBURGH, ACTING CHIEF
OF POLICE REGINA MCDONALD,
OFFICER JOHN DOE #1, OFFICER JOHN
DOE #2, OFFICER JOHN DOE #3, OFFICER
JOHN DOE #4, OFFICER JOHN DOE #5,
OFFICER JOHN DOE #6, OFFICER JOHN
DOE #7, OFFICER JOHN DOE #8, OFFICER
JOHN DOE #9, & OFFICER JOHN DOE #10.

   Defendants.

CIVIL DIVISION

No.  GD 19-1728

Code:

Issue No.:

**PRAECIPE FOR APPEARANCE**

Filed on behalf of Defendants
CITY OF PITTSBURGH and ACTING CHIEF OF
POLICE REGINA MCDONALD

Counsel of Record for this Party:

Julie E. Koren
Assistant City Solicitor
Pa. I.D. #309642

Yvonne S. Hilton
City Solicitor
Pa. I.D. #74582

City of Pittsburgh
Department of Law
Firm #046

313 City-County Building
414 Grant Street
Pittsburgh, PA  15219

(412) 255-2032
julie.koren@pittsburghpa.gov

FILED
19 APR 15  PM 1:30
DEPT OF RECORDS
CIVIL DIVISION

**JURY TRIAL DEMANDED**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual, | CIVIL DIVISION |
| Plaintiff, | No.  GD 19-1728 |
| v. | Code: |
| CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA MCDONALD, OFFICER JOHN DOE #1, OFFICER JOHN DOE #2, OFFICER JOHN DOE #3, OFFICER JOHN DOE #4, OFFICER JOHN DOE #5, OFFICER JOHN DOE #6, OFFICER JOHN DOE #7, OFFICER JOHN DOE #8, OFFICER JOHN DOE #9, & OFFICER JOHN DOE #10. | Issue No.: |
| Defendants. | |

## PRAECIPE FOR APPEARANCE

**TO:**   Michael McGeever, Director of Court Records

Sir:

Kindly enter the appearance of Julie E. Koren, Assistant City Solicitor and Yvonne S. Hilton, City Solicitor, on behalf of the Defendants City of Pittsburgh and Acting Chief of Police Regina McDonald in the above-referenced matter.

Respectfully submitted,

Julie E. Koren
Assistant City Solicitor


/s/ Yvonne S. Hilton
City Solicitor

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Defendant

Signature: *Juli Sher*

Name: Julie E. Koren

Attorney No. (if applicable): 309642

GD 19-1728

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2019, a true and correct copy of the within Praecipe for

Appearance was delivered first class mail, postage prepaid, to:

Todd J. Hollis, Esquire
Todd J. Hollis Law
The Pittsburgher
428 Forbes Avenue, Suite 505
Pittsburgh PA 15219-1603
*(Counsel for Plaintiff)*

Julie E. Koren
Assistant City Solicitor

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

ROBERT ALDRED, an individual
                    Plaintiff,
            v.
CITY OF PITTSBURGH, ACTING CHIEF
OF POLICE REGINA McDONALD,
OFFICER JOHN DOE #1, OFFICER JOHN
DOE #2, OFFICER JOHN DOE # 3,
OFFICER JOHN DOE #4, OFFICER JOHN
DOE #5, OFFICER JOHN DOE #6,
OFFICER JOHN DOE #7, OFFICER JOHN
DOE #8, OFFICER JOHN DOE # 9, &
OFFICER JOHN DOE #10.
                    Defendants.

CIVIL DIVISION

GD No.:19-001728

Code:

PRAECIPE TO REINSTATE COMPLAINT

I certify that this filing complies with
the provisions of the Public Access
Policy of the Unified Judicial System of
Pennsylvania: Case Records of the
Appellate and Trial Courts that require
filing confidential information and
documents differently than
non-confidential information and
documents.

_____
Todd J. Hollis, Esq.
Attorney For Plaintiff

Filed on behalf of Plaintiff:

ROBERT ALDRED

Counsel of Record for this Party:

Todd J. Hollis, Esquire
Pa. I.D. No. 72510

Todd J. Hollis Law
The Pittsburgher
428 Forbes Avenue, Suite 505
Pittsburgh PA  15219-1603

(412) 434.0252
(412) 434.0256 Facsimile
toddjhollis@gmail.com

FILED

19 JUN 20 PH 12: 20

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ALDRED, an individual | ) | CIVIL DIVISION |
| Plaintiff, | ) | |
| v. | ) | GD No.:19-001728 |
| CITY OF PITTSBURGH, ACTING | ) | |
| CHIEF OF POLICE REGINA | ) | |
| McDONALD, OFFICER JOHN DOE | ) | |
| #1, OFFICER JOHN DOE #2, | ) | |
| OFFICER JOHN DOE # 3, OFFICER | ) | |
| JOHN DOE #4, OFFICER JOHN DOE | ) | |
| #5, OFFICER JOHN DOE #6, | ) | |
| OFFICER JOHN DOE #7, OFFICER | ) | |
| JOHN DOE #8, OFFICER JOHN DOE | ) | |
| # 9, & OFFICER JOHN DOE #10. | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## PRAECIPE TO REINSTATE COMPLAINT

To the Department of Court Records:

    Kindly reinstate the Complaint in the above captioned matter.

                Respectfully submitted,

                By:_____
                Counsel to Plaintiff
                The Pittsburgher
                428 Forbes Avenue, Suite 505
                Pittsburgh, Pennsylvania 15219
                412.434.0252
                412.434.0256

Date: June 20, 2019                toddjhollis@gmail.com

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| ROBERT ALDRED, an individual<br><br>Plaintiff,<br><br>v.<br><br><br>CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, OFFICER MICHAEL SOROCZAK, OFFICER JOSHUA MATTHEWS and OFFICER LOGAN HANLEY.<br><br>Defendants. | CIVIL ACTION<br><br>GD No.:19-001728<br><br>PLAINTIFF'S CONSENTED MOTION FOR LEAVE TO AMEND COMPLAINT<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## ORDER OF THE COURT

AND NOW, this _21_ day of _June_ 2019, upon consideration of the foregoing Motion, it is

hereby ORDERED and DECREED that the Plaintiff's Consented Motion For Leave To Amend

Complaint is GRANTED.

BY THE COURT:

_____ J.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

ROBERT ALDRED, an individual
               Plaintiff,
         v.

CITY OF PITTSBURGH et al
              Defendants.

CIVIL DIVISION

GD No.:19-001728

Code:

PRAECIPE TO REINSTATE COMPLAINT

I certify that this filing complies with
the provisions of the Public Access
Policy of the Unified Judicial System of
Pennsylvania: Case Records of the
Appellate and Trial Courts that require
filing confidential information and
documents differently than
non-confidential information and
documents.

Todd J. Hollis, Esq.
Attorney For Plaintiff

Filed on behalf of Plaintiff:

ROBERT ALDRED

Counsel of Record for this Party:

Todd J. Hollis, Esquire
Pa. I.D. No. 72510

Todd J. Hollis Law
The Pittsburgher
428 Forbes Avenue, Suite 505
Pittsburgh PA  15219-1603

(412) 434.0252
(412) 434.0256 Facsimile
toddjhollis@gmail.com

ALLEGHENY COUNTY, PA
CIVIL/FAMILY DIVISION
DEPT OF COURT RECORDS

2019 JUL -8 PM 3: 10

FILED

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual<br>Plaintiff,<br>v.<br><br>CITY OF PITTSBURGH et al<br>Defendants. | )  CIVIL DIVISION<br>)<br>)  GD No.:19-001728<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  JURY TRIAL DEMANDED |

## PRAECIPE TO REINSTATE COMPLAINT

To the Department of Court Records:

    Kindly reinstate the Complaint in the above captioned matter.

                              Respectfully submitted,

                               By:
                               Counsel to Plaintiff
                               The Pittsburgher
                               428 Forbes Avenue, Suite 505
                               Pittsburgh, Pennsylvania 15219
                               412.434.0252
                               412.434.0256

Date: July 8, 2019                               toddjhollis@gmail.com