IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, OFFICER MICHAEL SOROCZAK, OFFICER JOSHUA MATTHEWS and OFFICER LOGAN HANLEY.<br><br>Defendants. | CIVIL DIVISION<br><br>GD No.: 2:19-cv-00838<br><br>**AMENDED COMPLAINT IN CIVIL ACTION**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.<br><br>/s/ Todd J. Hollis<br>Todd J. Hollis, Esq.<br>Attorney For Plaintiff<br><br>**Notice To Plead**:<br>You are hereby notified to file a written response to the enclosed AMENDED COMPLAINT IN CIVIL ACTION within twenty (20) days from service hereof or a judgment may be entered against you.<br><br><br>/s/ Todd J. Hollis<br>Todd J. Hollis, Esq.<br>Attorney For Plaintiff | : Filed on behalf of Plaintiff:<br><br>: **ROBERT ALDRED**<br>: Counsel of Record for this Party:<br>:<br>: Todd J. Hollis, Esquire<br>: Todd J. Hollis Law<br>: Pa. I.D. No. 72510<br><br>: The Pittsburgher<br>: 428 Forbes Avenue, Suite 505<br>: Pittsburgh PA  15219-1603<br>: (412) 434.0252<br>: (412) 434.0256 Facsimile<br>: toddjhollis@gmail.com |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual<br><br>          Plaintiff,<br><br>          v.<br>CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, OFFICER MICHAEL SOROCZAK, OFFICER JOSHUA MATTHEWS and OFFICER LOGAN HANLEY.<br><br><br>          Defendants. | CIVIL DIVISION<br><br>GD No.: 2:19-cv-00838<br><br>**AMENDED COMPLAINT IN CIVIL ACTION**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## NOTICE TO DEFEND

     You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within **twenty (20) days** after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

     **YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

     **IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**LAWYER REFERRAL SERVICES**
**ALLEGHENY COUNTY BAR ASSOCIATION**
**920 CITY-COUNTY BUILDING**
**PITTSBURGH, PA  15219**
**PHONE:  412-261-0518**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

| | |
|---|---|
| ROBERT ALDRED, an individual | CIVIL DIVISION |
| Plaintiff, | GD No.: 2:19-cv-00838 |
| v. | **AMENDED COMPLAINT IN CIVIL ACTION** |
| CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, OFFICER MICHAEL SOROCZAK, OFFICER JOSHUA MATTHEWS and OFFICER LOGAN HANLEY. | |
| Defendants. | **JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT IN CIVIL ACTION

AND NOW comes the Plaintiff, Robert Aldred, by and through his attorney, Todd Jonathan Hollis, Esquire, of Todd J. Hollis Law, and claims damages of the Defendants City of Pittsburgh, Acting Chief of Police Regina McDonald, Officer Michael Soroczak, Officer Joshua Matthews, and Officer Logan Hanley, upon a cause of action whereof the following are statements:

## THE PARTIES

1. The Plaintiff, Robert Aldred, ("Mr. Aldred), is an adult individual who resides in Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.

2. Defendant City of Pittsburgh, ("City"), is a municipality within the Commonwealth of Pennsylvania, with a principal place of business located at 414 Grant Street, Pittsburgh, Pennsylvania 15219, which at all times relevant hereto, was authorized to and did operate and maintain a police department. Defendant City of Pittsburgh was acting by and through its duly authorized agents, employees and/or assigns, who were then and there acting within the course and scope of their employment under the color of state law and in accordance with the custom, policies and practices of the City of Pittsburgh.

3.   Defendant Regina McDonald, ("McDonald"), was at all times relevant hereto, the acting Chief of Police of the City of Pittsburgh Bureau of Police.  She is sued in her individual capacity. This defendant, at all times relevant hereto, had the day-to-day responsibility to ensure that City of Pittsburgh police officers were properly trained, supervised, and disciplined, and also, at all times relevant hereto.

4.   Defendant Michael Soroczak, ("Soroczak"), is an adult individual residing in the City of Pittsburgh,  who at all times relevant hereto, was employed as a City of Pittsburgh police officer and who with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom practices and/or policies of the City of Pittsburgh.  He is sued in his individual capacity.

5. Defendant Joshua Matthews ("Matthews"), is an adult individual residing in the City of Pittsburgh,  who at all times relevant hereto, was employed as a City of Pittsburgh police officer and who with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom practices and/or policies of the City of Pittsburgh.  He is sued in his individual capacity.

6. Defendant Logan Hanley ("Hanley"), is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as a City of Pittsburgh police officer and who with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom practices and/or policies of the City of Pittsburgh.  He is sued in his individual capacity.

7.   Plaintiff, Mr. Aldred, is informed and believes, and thereon alleges, that each of the Defendants sued herein was negligent, wrongful, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Mr. Aldred.

8.   Further, the City of Pittsburgh Police was, at all material times, responsible for the hiring, training, supervision, and discipline of the individual Defendants.

9.   Plaintiff, Mr. Aldred, is informed and believes, and thereon alleges, that each of the individually named Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Mr. Aldred is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

10. At all material times, each Defendant was jointly engaged in tortuous activity, and was an integral participant to the events and violations of rights described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

11. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the Commonwealth of Pennsylvania.

## STATEMENT OF FACTS
## BACKGROUND OF THE ATTACK

12.   The matters complained of herein occurred on Friday, June 23, 2017, the morning of Saturday, June 24, 2017, at Mr. Aldred's home, located in the Mount Washington area of Pittsburgh at 496 Norton Street, Pittsburgh Pennsylvania 15211.

13. Mr. Aldred lawfully rents his home pursuant to a written lease agreement. Mr. Aldred has one roommate, Joshua Chebatoris, who was not home when the Defendant Officers first entered their home. Chebatoris returned to the home after the Defendant Officers had handcuffed and detained Mr. Aldred on their front porch.

14. On or about June 23, 2017, Mr. Aldred's screen door was broken.

15. Following the incident complained of herein, Mr. Aldred learned that an anonymous neighbor called the Pittsburgh Police to report that they suspected a burglary was taking place at his home.

## PLAINTIFF'S MEDICAL BACKGROUND

16. Mr. Aldred is legally blind, and also suffers from chronic post-traumatic stress disorder, severe anxiety, lucid dreams and nightmares, Bipolar Disorder, and Borderline Personality Disorder, among other ailments.

17. Mr. Aldred regularly takes various prescription medications, pursuant to his doctor's orders, to treat the above-mentioned ailments and disorders.

18. On June 24, 2017, Mr. Aldred was transitioning to a new prescription medication to treat his ailments and disorders, under his doctor's supervision.

19. Mr. Aldred believes that his adjustment to this new prescription medications further hindered his perception, including his ability to understand and react to what was going on inside of his home on the night of June 24, 2017.

## THE ATTACK

20. On Friday, June 24, 2017, around 11 o'clock p.m., Mr. Aldred finished working as a waiter at a restaurant located in downtown Pittsburgh. Mr. Aldred and two friends went to a lounge, also located in downtown Pittsburgh.

21. Around 12:30 a.m., Mr. Aldred went back to his apartment in Mount Washington.

22. Upon returning home, Mr. Aldred noticed that his screen door was broken. His front door, which was located behind the screen, was intact. Mr. Aldred was not bothered by the broken screen door.

23. Mr. Aldred entered his home, and went to bed.

24. Mr. Aldred's bedroom encompasses the entire third floor of the house.

25. The second story of the house contains a common living area, and a second bedroom where his roommate, Joshua Chebatoris, lives. Mr. Chebatoris was not home at the time that Mr. Aldred went to bed.

26. While Mr. Aldred was asleep in his bedroom on the third story of his home, the Defendant Officers, and one German Shepherd canine officer, entered his bedroom.

27.  The Defendant Officers each used a flashlight to gain a clear view of the inside of Mr. Aldred's home.

28. Mr. Aldred did not hear the Defendant Officers enter his home, knock, or announce their presence. He first noticed the Defendant Officers and the canine officer when they entered his third-floor bedroom with their flashlights.

29. Mr. Aldred woke up, but was naturally confused about what was happening, and why anyone was in his bedroom.

30. Mr. Aldred is legally blind, and receives various prescription medications.

31. Mr. Aldred was not armed, was sleeping in his own bedroom, and naked.

32. The Defendant Officers dragged him out of his bed, and on to the floor of his bedroom.

33. Mr. Aldred did not resist, attempt to flee, or make any threatening statements or actions towards the Defendant Officers.

34. Mr. Aldred did not and does not have any outstanding warrants for his arrest.

35. None of the Defendants, the Defendant Officers, had either reasonable suspicion or probable cause to believe that Mr. Aldred had committed a serious or violent crime, or that he was about to flee.

36. Mr. Aldred had nothing in his hands, which were clearly visible, was neither fleeing nor resisting, and posed no immediate threat to anyone.

37. Despite this, and without warning, the Defendant Officer Hanley unleashed the canine officer on Mr. Aldred and allowed and encouraged the canine to attack him.

38. Pursuant to the Defendant Officers' conduct, the German Shepherd ran at Mr. Aldred, who was laying naked on the floor of his bedroom.

39. Mr. Aldred instinctively raised his right forearm in front of his face to shield it from the dog's vicious attack.

40. The canine sunk his teeth all the way down into Mr. Aldred's right forearm, causing him excruciating pain.

41. The canine continued to bite Mr. Aldred all over his right forearm and his outer right thigh.

42. Mr. Aldred sustained noticeable scars on his right arm and thigh area. The scars are likely to be permanent.

43. Mr. Aldred was bleeding profusely.

44. Mr. Aldred asked the Defendant Officers what they were doing in his house.

45. Mr. Aldred repeatedly told the Defendant Officers that he lived at the house.

46. Mr. Aldred begged the Defendant Officers to stop the dog from attacking him.

47. In response, the Defendant Officers placed handcuffs on Mr. Aldred behind his back, as he was on his stomach, naked on his bedroom floor.

48. Mr. Aldred repeated to Defendant Officers that he lived at the house, and asked them to stop the dog from attacking him.

49. the Defendant Officers responded that they needed to do more questioning.

50. the Defendant Officers pulled Mr. Aldred off the floor and onto his feet, and walked him downstairs to the second story of his house.

51. One of the officers grabbed a pair of track pants from the second-floor bedroom and put them on Mr. Aldred, then continued walking him downstairs to the first floor.

52. the Defendant Officers took the Plaintiff outside of his home and sat him on a couch on the front porch.

53. Mr. Aldred was hysterical, crying and still bleeding profusely.

54. Mr. Aldred continued to tell the Defendant Officers that he lived at the house, the Defendant Officers nonetheless detained Mr. Aldred, and left him handcuffed on his couch on his front porch, while they interrogated him without reason.

55. Numerous neighbors witnessed the Defendant Officers interrogate Mr. Aldred while he was in handcuffs on his own front porch.

56. Around 2:00 o'clock a.m., Mr. Aldred's roommate, Joshua Chebatoris, arrived home.

57. Chebatoris approached the front porch where the Defendant Officers had detained Mr. Aldred, and asked what had happened to his roommate.

58. Chebatoris told the Defendant Officers that he lived at the home with Mr. Aldred.

59. Chebatoris showed the Defendant Officers his driver's license, which contained the address of the residence where the events complained of herein took place.

60. One of the Officers took Chebatoris to the side of the front porch to question him separately.

61. Mr. Aldred told the Defendant Officers that he had a medical condition that required attention.

62. One of the officers motioned for the other officers to leave the front porch. The officer put on plastic gloves, and then approached Mr. Aldred and removed his handcuffs.

63. The Officer asked Mr. Aldred if he thought he needed to go to a hospital.

64. Mr. Aldred told the Officer that he absolutely needed to go to an emergency room because he was still bleeding profusely and in excruciating pain from the attack.

65. An ambulance arrived while Chebatoris was being questioned by police in a separate area.

66. Mr. Aldred was able to walk himself into the back of the ambulance and sit on the paramedic's ledge as he was transported to the room.

67. Mr. Aldred was taken to UPMC Mercy Emergency Room for treatment.

68. Mr. Aldred was prescribed antibiotics and painkillers for the severe cuts he suffered from the dog attack.

69. Physicians wrapped the Plaintiff's right arm in gauze to contain the bleeding.

70. Mr. Aldred's treating physician ordered X-Rays of his right arm to be taken, to determine if the deep dog bite had damaged his bone.

71. While being treated at UPMC Mercy Emergency Room, Mr. Aldred was visibly shaken and hysterical due to the entire ordeal.

72. UPMC Mercy staff told the Plaintiff that he needed to calm down, but he was unable remain calm due to the brutal attack.

73. Mr. Aldred was discharged around 8 o'clock a.m. on Saturday, June 24, 2017.

74. Mr. Aldred was still in pain, and so he went to Allegheny General hospital later that day, June 24, 2017, and again the following day, June 25, 2017.

75. Plaintiff was not charged with any crimes, and was not given any citations or paperwork regarding the incident.

76. At all times during Mr. Aldred's contact with Defendants, he behaved peacefully and lawfully.  Plaintiff never possessed or displayed any weapon, nor did he threaten anyone in any way. Further, Plaintiff never resisted a lawful order and never attempted to escape.

77. Defendants lacked probable cause to believe Plaintiff had committed any crime.

78. The force used by Defendants and the Defendant Officers against Mr. Aldred was unjustified, excessive and objectively unreasonable under the circumstances.

79. At all material times, Defendants' seizure of Mr. Aldred was done without probable cause, reasonable suspicion, or other legal right; lasted an excessive amount of time; and was conducted unreasonably.

80. Alternatively, or concurrently, Defendants' own excessive and unreasonable actions created the situation in which the Defendant Officers decided to unlawfully seize and use force against Mr. Aldred, and caused an escalation of events leading to the unlawful seizure and use of force against, and injury to, Mr. Aldred.

81. At all material times, and alternatively, the actions and omissions of each defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Mr. Aldred's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

82. Mr. Aldred required medical treatment for his injuries caused by Defendants, and Plaintiff has incurred medical bills.

83. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff sustained the following injuries and damages, past and future, among others: significant physical injuries requiring medical treatment, including but not limited to multiple bites, puncture wounds, soft tissue injuries, cuts and lacerations; pain and suffering, including emotional distress; medical expenses; violation of constitutional rights; all damages and penalties recoverable under 42 U.S.C. §§ 1983, and as otherwise allowed under Pennsylvania and United States statutes, codes, and common law.

84.    the Defendant Officers stood by and did nothing to order or restrain the dog from biting Mr. Aldred.

85.    the Defendant Officers failed to give a command for the dog to stop biting Mr. Aldred's arm.

86.    Although they were with Defendant Officer Hanley, or close by him at all times, Defendant Officers Soroczak & Matthews failed to intervene to stop them from allowing the dog to bite Aldred. Moreover, Defendant Officers Soroczak & Matthews acted in concert with Defendant Officer Hanley in allowing the dog to bite Aldred.

87. At all times relevant to the facts set forth in this Complaint, Mr. Aldred was acting in the exercise of due care for his own safety, welfare, and well being from harm.

## COUNT I
## NEGLIGENCE

Plaintiff, Robert Aldred, an individual
v.
Defendants, the City of Pittsburgh, Regina McDonald,
Michael Soroczak, individually,
Joshua Matthews, individually and
Logan Hanley, individually.

88. The averments set forth in paragraphs numbered one (1) through (87) are incorporated by reference thereto as if more fully set forth herein.

89.   The Defendant Officers, at all relevant times on June 23 and 24, 2017 are employed by the City of Pittsburgh, and on duty in the course of their employment, owed a reasonable duty of care to Plaintiff in employing the use of a dangerous dog to assist in the investigation of the alleged burglary at the Plaintiff's home.

90.   The use of police dogs are tantamount to the most extreme use of force short of deadly force.

91. The Defendant Officers failed to use reasonable care in the use of the police dog during the search of Plaintiff's home, as described above, and thereby breached their duty to the Plaintiff which caused the injuries, as described above.

92. The Defendant City of Pittsburgh negligently appointed or failed to appoint a reasonable handler or canine.  This negligent appointment to Officer Hanley proximately led to the Plaintiff's harm.

93. The Defendant City of Pittsburgh negligently assigned the canine used in the matter at issue, which exceeded the canine's scope of training and/or capability.  This negligent assignment proximately led to the Plaintiff's harm.

94. Officer Hanley negligently directed or failed to properly direct the canine during its' interaction with the Plaintiff which proximately led to the Plaintiff's harm.

95. The Defendant City of Pittsburgh negligently entrusted the canine to Officer Hanley. This negligent entrustment proximately led to the Plaintiff's harm.

96. The Defendant City of Pittsburgh negligently trained or failed to reasonably train officer Hanley or his canine partner.  This negligence proximately led to the Plaintiff's harm.

97. The Defendant City of Pittsburgh negligently supervised or failed to supervise Officer Hanley or the canine.  This negligence proximately led to the Plaintiff's harm.

98. The attack upon the Plaintiff by the Defendants' police dog was an unreasonable seizure under the Fourth (4th) Amendment.

99. The City's failure to provide appropriate oversight of its' K-9 program led to the Plaintiff's injuries.

100. The damages sustained by the Plaintiff were severe.

101. At the time of the injuries to Plaintiff, the Defendant Officers were the authorized employees, agents, or servants of the City of Pittsburgh Police, and acted in the course of employment or otherwise, for the City of Pittsburgh. Accordingly, under the doctrine of respondeat superior the City is liable to the Plaintiff for the negligent acts of the Defendant Officers.

102. In addition, the City of Pittsburgh breached the duty of care it owed to the Plaintiff by employing the Defendant Officers as its employees, agents, or servants and entrusting them with the responsibility of safely searching for suspects, or assisting with the search of the suspects, with a dangerous police dog.

103. The Defendant Officers were not qualified to perform this duty.

104. The Defendant City of Pittsburgh further breached its' duty of care it owed to the Plaintiff by failing to train and/or supervise or properly train and/or supervise the Defendant Officers in searching for suspects, especially with the use of a dangerous police dog.

105. As a direct and proximate result of the Police dog attack on the Plaintiff, as described above, the Plaintiff suffered and continues to suffer severe injuries of the mind and body, has incurred medical expenses, permanent scarring, and lost wages. Accordingly, the Commonwealth is liable to the Plaintiff.

**WHEREFORE**, Plaintiff requests judgment against the Defendant City of Pittsburgh, Regina McDonald, individually, Michael Soroczak, individually, Joshua Matthews, individually and Logan Hanley, individually for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT II
## VICARIOUS LIABILITY

Plaintiff, Robert Aldred, an individual.

v.

Defendant, The City of Pittsburgh.

106.    The averments set forth in paragraphs numbered one (1) through (105) are incorporated by reference thereto as if more fully set forth herein.

107.    The Plaintiff asserts that under the broadest principles of vicarious liability the Defendant City of Pittsburgh is legally responsible for all of the acts herein alleged against its employees, and the Defendant Officers respectively, and perhaps others, committed within the scope of their employment, who at all pertinent times were acting as officers of the law under the color of law within the scope of their employment.

108.  Municipal employees who are sued under state law who provide care, or control of animals in the possession or control of a local agency, including but not limited to police dogs and horses are not protected by government immunity. 42 Pa.C.S. §8542.

109.    Accordingly, under the principles of vicarious liability, as discussed in the dissenting opinion of Board of Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997), the Defendants are vicariously liable for the acts, respectively of the Defendant Officers for their violation of Plaintiff' civil and constitutional rights.

110.    The Plaintiff bring this allegation as a good faith reservation of their right to seek a change of the law in this regard as set forth in Monnell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

   **WHEREFORE**, Plaintiff requests judgment against the Defendant City of Pittsburgh for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT III
## RESPONDEAT SUPERIOR

Plaintiff, Robert Aldred, an individual.

v.

Defendant, The City of Pittsburgh.

111.   The averments set forth in paragraphs numbered one (1) through (110) are incorporated by reference thereto as if more fully set forth herein.

112.   The Plaintiff asserts that under the broadest principles of Respondeat Superior the Defendant City of Pittsburgh is legally responsible for all of the acts herein alleged against its employees, and the Defendant Officers respectively, and perhaps others, committed within the scope of their employment, who at all pertinent times were acting as officers of the law under the color of law within the scope of their employment.

113.  Municipal employees who are sued under state law who provide care, or control of animals in the possession or control of a local agency, including but not limited to police dogs and horses are not protected by government immunity. 42 Pa.C.S. §8542.

114.   Accordingly, under the principles of Respondeat Superior, the Defendant is liable for the acts, respectively of the Defendant Officers for their violation of Plaintiff' civil and constitutional rights.

115.   The Plaintiff bring this allegation as a good faith reservation of their right to seek a change of the law in this regard as set forth in Monnell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

**WHEREFORE**, Plaintiff requests judgment against the Defendant City of Pittsburgh for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT IV

### ASSAULT
Robert Aldred, an individual
v.
Michael Soroczak, individually, Joshua Matthews,
individually and Logan Hanley, individually

116.   The averments set forth in paragraphs numbered one (1) through (115) are incorporated by reference thereto as if more fully set forth herein.

117.   Defendants Soroczak, Matthews & Hanley intended to cause and did cause Mr. Aldred to suffer reasonable apprehension of an immediate harmful contact.

**WHEREFORE**, Plaintiff requests judgment against Michael Soroczak, individually, Joshua Matthews, individually and Logan Hanley, individually jointly and severally, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT V

### BATTERY

Robert Aldred, an individual
v.
Michael Soroczak, individually, Joshua Matthews,
individually and Logan Hanley, individually

118.   The averments set forth in paragraphs numbered one (1) through (117) are incorporated by reference thereto as if more fully set forth herein.

119.   Defendants Pittsburgh Police, a municipal entity, and the Defendant Officers, individuals, were in fact the aggressors, agitators and culprits harassing Mr. Aldred.

120.   Defendant Officers, individuals intended to cause, and did in fact cause harmful contact upon Mr. Aldred's person.

121.   Mr. Aldred did not consent to the Defendants' acts.

122.   As a direct and proximate result of Defendants' conduct, Mr. Aldred suffered extreme mental anguish, physical pain and humiliation.

123.   As a direct and proximate result of Defendants' conduct, Mr. Aldred was unnecessarily handcuffed and confined at his lawful home.  Accordingly, Mr. Aldred is entitled to compensatory damages in an amount to be determined by proof at trial.

124.   Defendants' acts were done knowingly, willfully, and with malicious intent, and Mr. Aldred is entitled to punitive damages in an amount to be determined by proof at trial.

WHEREFORE, Plaintiff requests judgment against Defendant officers Michael Soroczak, individually, Joshua Matthews, individually and Logan Hanley, individually jointly and severally, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT VI
## INTENTIONAL INFLICTION OF
## EMOTIONAL DISTRESS

Robert Aldred, an individual
v.
Defendants Michael Soroczak, individually,
Joshua Matthews, individually and Logan Hanley, individually

125.   The averments set forth in paragraphs numbered one (1) through (124) are incorporated by reference thereto as if more fully set forth herein.

126.   When Defendant Officers Soroczak, Matthews and Hanley, undertook actions or failed to act, as described above,  when they knew or should have known that emotional distress was the likely result of their conduct.

127.   Defendant Officers Soroczak, Matthews and Hanley's actions and failure to act, as described above, were extreme and outrageous, were beyond all possible bounds of decency, and were utterly intolerable in a civilized community. The Defendants caused the Plaintiff to sustain emotional distress so severe that no reasonable person could be expected to endure it.

128.   As a result of the conduct of the Defendants, therefore, the Plaintiff has suffered and continues to suffer extreme emotional distress and anxiety. Consequently, the Defendants are liable to the Plaintiff for intentional infliction of emotional distress.

**WHEREFORE**, Plaintiff demands judgment be entered against Defendants, Soroczak, Matthews and Hanley, in an amount in excess of the arbitration limits against the Defendants, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT VII
## FALSE ARREST

Robert Aldred, an individual
v.
Defendants Michael Soroczak, individually,
Joshua Matthews, individually and Logan Hanley, individually

129.    The averments set forth in paragraphs numbered one (1) through (128) are incorporated by reference thereto as if more fully set forth herein.

130.    The Plaintiff was illegally arrested without a warrant or probable cause and detained in his home by the Defendant Officers.

131.    The detention of the Plaintiff was unlawful.

132.    The wrongful conduct of the Defendant Officers is within the scope of their employment with the City.

133.    The actions or conduct of the Defendant Officers is the kind of conduct the City expects its' officers to perform. The City has granted the officers broad authority and power.

134.    The Defendant Officers' conduct was intentional and done in the service of their duty to their employer the City of Pittsburgh.

135.    The force used by the Defendant Officers was not expected by the City.  Arresting the Plaintiff in his home using lethal and dangerous weapons when he committed no crime is unreasonable, wanton and reckless.

136.    As a result of the conduct of the Defendants, therefore, the Plaintiff has suffered and continues to suffer extreme emotional distress and anxiety. Consequently, the Defendants are liable to the Plaintiff for False Arrest.

WHEREFORE, Plaintiff requests judgment against the Defendant officers, Michael Soroczak, individually, Joshua Matthews, individually and Logan Hanley, individually jointly and severally, for compensatory damages and for punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT VIII
## FALSE IMPRISONMENT

Robert Aldred, an individual
v.
Defendant Michael Soroczak, individually,
Joshua Matthews, individually and Logan Hanley, individually

137.  The averments set forth in paragraphs numbered  (1) through (136) are incorporated by reference thereto as if more fully set forth herein.

138.  The Detention of the Plaintiff by the Defendant Officers was willful.

139.  The Plaintiff did not consent to his detention by the Defendant Officers.

140.  The detention by the Defendant Officers was unlawful.

141.  As a result of the conduct of the Defendants, the Plaintiff has suffered and continues to suffer extreme emotional distress and anxiety. Consequently, the Defendants are liable to the Plaintiff for False Imprisonment.

WHEREFORE, Plaintiff demands judgment be entered against Defendants, Michael Soroczak, individually, Joshua Matthews, individually and Logan Hanley, individually, in an amount in excess of the arbitration limits and for compensatory damages and punitive damages including costs of this action, and all other relief the Court deems appropriate under the circumstances.

## COUNT IX
## § 1983 EXCESSIVE USE OF FORCE

Robert Aldred, an individual
v.
Defendants, Michael Soroczak, individually,
Joshua Matthews, individually and Logan Hanley, individually

142.   The allegations contained in Paragraphs (1) through (141) of this AMENDED COMPLAINT IN CIVIL ACTION are incorporated herein by reference as if the same were set forth at length.

143.   Pursuant to the Fourth Amendment of the U.S. Constitution, police officers enjoy a privilege to use objectively reasonable force to affect a lawful arrest.

144.   At the time and date aforementioned, officers Michael Soroczak, Joshua Matthews and Logan Hanley were police officers with the City of Pittsburgh Police Department and acted within the scope of their employment.

145.   Officers Michael Soroczak, Joshua Matthews and Logan Hanley used unnecessary and excessive force in the detention arrest of Aldred.

146.   Officers Michael Soroczak, Joshua Matthews and Logan Hanley, while detaining Aldred did unnecessarily punch, kick, knee, batter and abuse Aldred when in fact he offered no resistance.

147.   The force used by officers Michael Soroczak, Joshua Matthews and Logan Hanley while detaining Aldred was objectively unreasonable and excessive.

148.   Aldred at no time resisted officers Michael Soroczak, Joshua Matthews and Logan Hanley, who physically assaulted him.

149.   As a direct result of the said unlawful and malicious physical abuse of Aldred by officers Michael Soroczak, Joshua Matthews and Logan Hanley, committed under the color of law and under their authority as police officers of the City of Pittsburgh, Aldred suffered serious bodily harm and was deprived of his right to secure his person against unreasonable use of excessive force, all of which was in violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983.

150.    As a result of officers Michael Soroczak, Joshua Matthews and Logan Hanley's conduct, Aldred suffered physical, emotional and psychological injuries, all of which occurred by reason of the assault and trauma described above.

151.    Aldred has suffered loss of his general good health and vitality.

152.    Officers Michael Soroczak, Joshua Matthews and Logan Hanley's acts were wanton, malicious and oppressive, entitling Aldred to punitive damages.

WHEREFORE, Plaintiff, Robert Aldred, demands judgment in his favor, and against the Defendant officers Michael Soroczak, Joshua Matthews and Logan Hanley, individually, for compensatory damages and punitive damages together with costs of this action, reasonable attorneys' fees, and all other relief this Honorable Court deems appropriate under the circumstances.

### COUNT X
### § 1983 Monell- Municipal Liability for Failure to Properly Train, Supervise and Discipline

Robert Aldred, an individual
v.
Defendant, City of Pittsburgh,

153.    The allegations contained in paragraphs 1 through 152 of this AMENDED COMPLAINT IN CIVIL ACTION are incorporated herein by reference as if the same were set forth at length.

154.    The City of Pittsburgh, acting through its' police department, and through the individual Defendant police officers named herein who were employed by the police department and acting under color of law, directly caused the constitutional violations suffered by Aldred.

155.    The City of Pittsburgh is therefore liable for the damages suffered by Aldred, as a result of the conduct of the City of Pittsburgh police officers Michael Soroczak, Joshua Matthews and Logan Hanley.

156.    At all times relevant to this Complaint, the City of Pittsburgh, acting through its' police department, had in effect policies, practices, and customs that condoned and fostered the

unconstitutional conduct of the individual Defendant police officers Michael Soroczak, Joshua Matthews and Logan Hanley.

157.   The City of Pittsburgh's policies, practices and customs were a direct and proximate cause of the damages and injuries suffered by Aldred and complained of herein and of the unlawful conduct of Defendant police officers Michael Soroczak, Joshua Matthews and Logan Hanley.

158.    Aldred's June 23, 2017,  encounter with the City of Pittsburgh police is one of the many encounters in which young men who are taken into custody by City of Pittsburgh police officers would become the victims of police brutality.

159.   At all times relevant to this complaint, Defendant City of Pittsburgh, acting through its police department, had policies, practices, customs, and usages of:

a. Encouraging and/or tacitly sanctioning the violation of the Constitutional rights of its citizens;

b.  Upon information and belief, planning and implementing policies, practices, custom and usage of using force or excessive force where force wasn't necessary to entice a suspect to retaliate to excuse their excessive and unreasonable actions; and

c. Using their authority to intimidate or harass citizens within the City of Pittsburgh to suppress their civil and constitutional rights.

160.   The City of Pittsburgh police department consciously disregarded the illegality and unconstitutionality of said use of force and retaliation, in order to punish and suppress Aldred's civil rights. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

161.   It was the policy and/or custom of the City of Pittsburgh to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the City of Pittsburgh.

162.   It was the policy and/or custom of the City of Pittsburgh to inadequately train, supervise and discipline their police officers, including the Defendant officers Michael Soroczak, Joshua Matthews and Logan Hanley, individually, thereby failing to adequately

Discourage further constitutional violations on the part of its police officers. The City of Pittsburgh did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

163.   As a result of the above described policies and customs, police officers of the City of Pittsburgh, including the individual Defendant officers Michael Soroczak, Joshua Matthews and Logan Hanley, individually, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

164.   The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the City of Pittsburgh to the constitutional rights of persons within the City of Pittsburgh, and were the direct and proximate cause of the violations of Aldred' rights alleged herein.

165.   Aldred believes and therefore avers, that the City of Pittsburgh police department, acting through its supervising agents, failed to make any inquiry or investigation, or in any way appropriately discipline the offending officers.

166.   Aldred, based upon information and upon the circumstances surrounding his contact with the City of Pittsburgh, believes that there exists, and has existed for a time prior to the incident relating to him, a deliberate indifference by the City of Pittsburgh to the complaints of citizens regarding the alleged improper actions of the City of Pittsburgh police officers.

167.   As a result of the deliberate indifference of the City of Pittsburgh, and its failure to properly discipline, supervise and adequately train the members of its police department, and the actions taken against Aldred, said Defendants, through its supervising agents have tacitly authorized, as well as initiated a pattern and practice which has permitted and/or will permit police officers such as the Defendants herein to violate the United States Constitution and the laws of the Commonwealth of Pennsylvania.

168.   Aldred further alleges, upon information and belief, that the supervising agents responsible for overseeing and reviewing acts of the City of Pittsburgh police department, has failed to establish a training program, disciplinary or supervisory procedures adequate to enable police officers to carry out their duties.

169.    Aldred further alleges, upon information and belief, that:

(a) The City of Pittsburgh failed to train, supervise and discipline their police officers;

(b) Any program that was provided by the City of Pittsburgh to train, supervise and discipline its police officers was inadequate to enable said officers to carry out their duties;

(c) The City of Pittsburgh was aware of the obvious need for and inadequacy of said programs, so as to result in the violation of Constitutional rights;

(d) The City of Pittsburgh knew or should have known that the failure to properly train, supervise and discipline its police officers was likely to result in the violation of Mr. Aldred' Constitutional rights;

(e) The City of Pittsburgh policymakers were deliberately indifferent to the need for such training, supervision and discipline to protect the rights of Plaintiff and other citizens; and

(f) The failure of the City of Pittsburgh to provide the proper training, supervision and discipline has caused Aldred and others to suffer violations of their Constitutional rights, and has created an environment which encourages police officers to take the law into their own hands.

170.    All of the above actions have in the past contributed, and will in the future continue to contribute, to the improper treatment of citizens of the City of Pittsburgh, and those passing through its physical boundaries, so as to imply, by its failure to act, that the City of Pittsburgh tacitly authorizes a pattern and practice as previously set forth herein.

171.    As a direct and proximate result of the City of Pittsburgh's actions as herein alleged, Aldred was caused to suffer physical and emotional injuries, some of which may be permanent; he has suffered special damages in the form of medical expenses; was required to obtain legal counsel, at substantial expense and inconvenience, may be required to secure a scientific expert to assist him in his defense, and will suffer additional special damages in the future, the amounts of which have not been fully determined, all to his financial detriment.

WHEREFORE, the Plaintiff, Robert Aldred, demands judgment in his favor, and against the Defendant, City of Pittsburgh, for compensatory damages, together with costs of this action, reasonable attorneys' fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

## COUNT XI
### § 1983 Failure to Intervene

Robert Aldred, an individual
v.
Michael Soroczak, individually
and Joshua Matthews, individually

172.    The allegations contained in Paragraphs 1 through 171 of this AMENDED COMPLAINT IN CIVIL ACTION are incorporated herein by reference as if the same were set forth at length.

173.    Mr. Aldred contends that Officer Soroczak and Matthews violated his right to be free from the excessive force of Officer Logan Hanley and bis canine partner.  Soroczak and Matthews failed to intervene to protect Aldred from officer Hanley's unnecessary use of force.

174.    Soroczak and Matthews were integral participants and fundamentally involved in the assault upon Aldred as they watched as officer Hanley unnecessarily ordered his canine partner to attack Aldred while he was in a harmless position.  Soroczak and Matthews did nothing to protect Aldred from officer Hanley's unconstitutional violations.

175.    As integral participants Soroczak and Matthews were not mere bystanders to officer Hanley's unconstitutional conduct.  They were aware of  it and failed to object to it or to make an effort to protect Aldred from officer Hanley when they had a duty to do so.

176.    Soroczak and Matthews had a reasonable opportunity to intervene to protect Aldred and failed to do so.

177.    As a result of Soroczak and Matthews's failure to intervene and protect Aldred from officer Hanley and other members of his police department Mr. Aldred' was subjected to harm and his civil rights were violated.

178.   A police officer has a duty to take reasonable steps to protect a victim from another officer's excessive force. _Smith v. Mensinger_, 293 F.3d 641, 650 (3d Cir. 2002).

179.   If an officer is present when his officer/colleague violates a citizen's constitutional rights, the officer is liable under Section 1983, if he had reason to believe that his colleague was committing a constitutional violation, and he had a reasonable and realistic opportunity to intervene but failed to do so. See _Sullivan v. Warminster Twp._, 765 F.Supp.2d 687, 701 (E.D. Pa. 2011); Bryant v. City of Phila., 2012 WL 258399, *8 (E.D. Pa. Jan. 27, 2012) (Robreno, J.).

WHEREFORE, the Plaintiff, Robert Aldred, demands judgment in his favor, and against the Defendants, Soroczak and Matthews, individually for compensatory damages, punitive damages plus costs of this action, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

Respectfully submitted,

TODD J. HOLLIS LAW

/s/Todd J. Hollis
Todd J. Hollis, Esquire
Supreme Court I.D. No. 72510
The Pittsburgher
428 Forbes Avenue, Suite 505
Pittsburgh, PA 15219
Phone: (412) 434.0252
Fax: (412) 434.0256
Email: toddjhollis@gmail.com

Dated:  September 2, 2019